UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEWTON AC/DC FUND L.P.,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>HECTOR DAO, FAROOQ HASSAN, and JOHN DOE,<br><br>　　　　Defendants. | Civil Action No. 24-722 (RK) (JBD)<br><br>**<u>MEMORANDUM OPINION</u>** |

**<u>KIRSCH, District Judge</u>**

　　**THIS MATTER** comes before the Court upon Plaintiff Newton AC/DC Fund L.P.'s *ex parte* Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2.) Plaintiff seeks an order restraining Defendants Hector DAO, Farooq Hassan ("Hassan"), and John Doe (collectively, "Defendants") from transferring assets out of a specified cryptocurrency wallet as well as directing non-party Circle Internet Financial, LLC ("Circle") to block or disable its tokens that are held in the same specified cryptocurrency wallet. (Proposed Order, ECF No. 2-4 at *7.)[1] The Court has considered Plaintiff's submission and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion, (ECF No. 2), is **DENIED**.

---

[1] Pin-cites preceded by an asterisk refer to the page numbers in the CM/ECF header.

I.     **BACKGROUND** [2]

Defendant Hector DAO is a decentralized autonomous organization ("DAO"), which is an "unincorporated association of people who collectively administer the operations of a cryptocurrency." (Meyer Decl. ¶ 7.) Defendant Hassan is one of the "principals" of Hector DAO. (*Id.* ¶ 9.) Hector DAO developed, issued, and sold the cryptocurrency "HEC tokens," which can be sent and received between users electronically in transactions recorded on a publicly available, virtual ledger. (*Id.* ¶¶ 2–3, 8.) Together, Hector DAO and Hassan are the "Named Defendants."

Plaintiff purchased 18,642 HEC tokens through multiple transactions between June 12, 2023 and July 11, 2023, at an average price of $3.80 each. (*Id.* ¶ 16.)[3] Plaintiff's out-of-pocket expenditure to acquire its HEC tokens therefore totaled approximately $70,839.60. Hector DAO controls a "treasury" wallet, (the "Treasury"), which purportedly held assets from which the HEC tokens would derive value. (*Id.* ¶¶ 12, 16.)[4] The Treasury assets "consist[] in large part [of] funds originally derived from the sale of HEC tokens to the public." (*Id.* ¶ 10.) The Treasury's assets are primarily held in a publicly-viewable cryptocurrency wallet containing U.S. Dollar Coin ("USDC") tokens, another form of cryptocurrency issued by third-party Circle. (*Id.* ¶¶ 10–11.)[5] Plaintiff believed that ownership of the HEC tokens would permit it to vote on issues regarding

---

[2] In support of its Motion, Plaintiff submitted two declarations which the Court relies on: the Declaration of Eric S. Meyer, a partner at Plaintiff, ("Meyer Decl."), (ECF No. 2-2), and the Declaration of William H. Newman, an attorney for Plaintiff, ("Newman Decl."), (ECF No. 4). The Court also cites Plaintiff's Complaint in the matter. (Compl., ECF No. 1.)

[3] It is not clear whether Plaintiff purchased these HEC tokens directly from Hector DAO or from a secondary source.

[4] Plaintiff identifies the Treasury as having the address 0xdcad10a8e82fe4e90cb69b1757c2d612745cd1c9. (Meyer Decl. ¶ 10.)

[5] Meyer asserts that Circle, as the issuer of USDC, has the ability to electronically freeze or block assets held in USDC in virtual wallets in response to a court order. (Meyer Decl. ¶ 11.) Newman indicates that Plaintiff has notified Circle of its pending Motion seeking a TRO. (Newman Decl. ¶ 5.)

2

the HEC tokens—such as whether HEC token holders could redeem their HEC tokens for a proportionate sale of the assets held in the Treasury (such as USDC). (*Id.* ¶ 13.)

Plaintiff's suit is based on its allegation that it—along with a majority of the HEC token holders—voted on July 15, 2023 to redeem their tokens for assets held in the Treasury. (Compl. ¶ 21.) Plaintiff contends that Hector DAO has failed to process any redemption requests, and instead has squandered the assets held in the Treasury. (*Id.* ¶¶ 22–23.) The Complaint alleges that Named Defendants, using Treasury assets, overpaid for "partnership agreements, software development, legal and operating expenses, and other contractual obligations"; overpaid its own managers and employees;[6] and lost millions of dollars' worth of assets in avoidable security incidents—*i.e.* ransom payments, hacks, and cyberattacks—in 2022 and 2023. (Compl. *id.* ¶¶ 24–31; Meyer Decl. ¶¶ 18–23.) Specifically, Plaintiff states that Hector DAO lost $652,000 in a security incident on June 1, 2023—eleven days before Plaintiff made its first purchase of HEC tokens. (Meyer Decl. ¶¶ 16, 19.) Hector DAO also allegedly lost $8 million in a hack on July 7, 2023—four days before Plaintiff made its second purchase of HEC tokens. (*Id.* ¶¶ 16, 20.) Further, Plaintiff states that on January 14 and 15, 2024, one transaction Hector DAO carried out with the Treasury assets was done in a way that (1) permitted unknown Defendant John Doe to steal approximately $2.7 million of the assets and (2) suggested to Plaintiff that Named Defendants intentionally permitted the John Doe to make off with the assets. (Meyer Decl. ¶¶ 24–34.) Plaintiff alleges that this last transaction reduced the value of their HEC tokens by over 22%. (*Id.* ¶ 38.)

On February 7, 2024, Plaintiff filed suit, bringing claims for breach of contract, unregistered offer and sale of securities in violation of federal securities laws, breach of fiduciary

---

[6] Plaintiff does not explain the nature of the Hector DAO organization or how a decentralized autonomous organization—which Plaintiff defines as an "unincorporated association of people who collectively administer the operations of a cryptocurrency," (Meyer Decl. ¶ 7)—can have principals, managers, and employees, (*id.* ¶¶ 9, 17).

duty, and conversion. (*Id.* ¶¶ 39–80.) Each count seeks unspecified "damages, including pre- and post-judgment interest" as well as other relief the Court deems appropriate. The Complaint's conversion count pertains to the $2.7 million in assets allegedly stolen by John Doe with Hector DAO's and Hassan's assistance. (*Id.* ¶¶ 79–83.)

Simultaneously with filing its Complaint, Plaintiff filed the instant Motion, requesting the Court to (1) enjoin Hector DAO and Hassan from transferring assets from the identified cryptocurrency wallet where the Treasury assets are held and (2) ordering Circle to freeze their USDC tokens from being transferred out of the same identified wallet. (ECF No. 2-4 at *7.) Plaintiff also requested the Court to issue an order to show cause why a preliminary injunction should not be entered pending resolution of the matter on the merits and to permit Plaintiff to effectuate service on Hector DAO and Circle via alternative means. (*Id.* at *8–9.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, a district court may issue a preliminary injunction or a temporary restraining order. Fed. R. Civ. P. 65. These are "'extraordinary remed[ies]' that 'should be granted only in limited circumstances.'" *Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd.*, No. 22-1710, 2022 WL 3536494, at *2 (3d Cir. Aug. 5, 2022) (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). The party seeking the temporary restraining order must demonstrate the following elements: "(1) the [movant] is likely to succeed on the merits; (2) denial will result in irreparable harm to the [movant]; (3) granting the injunction will not result in irreparable harm to the [non-movant]; and (4) granting the injunction is in the public interest." *Levine v. Fin. Freedom*, No. 18-4127, 2018 WL 4688338, at *2 (D.N.J. Sept. 28, 2018) (citing *Hartmann v. Maybee-Freud*, 279 F. App'x 142, 144 (3d Cir. 2008)). The movant bears the burden of showing its entitlement to an injunction. *See Ferring Pharms., Inc. v. Watson*

*Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)). Once the movant establishes the first two threshold factors, the Court "in its sound discretion" balances all four factors to determine whether preliminary injunctive relief is appropriate. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017) (citations omitted).

### III.  DISCUSSION

#### A.  TEMPORARY RESTRAINING ORDER

Plaintiff's Motion for a TRO must be denied because it fails to demonstrate irreparable harm. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (citations and quotation marks omitted) (holding that a failure to demonstrate irreparable injury alone "must necessarily result in the denial" of the temporary restraining order).

An irreparable injury is one "which cannot be redressed by a legal or an equitable remedy following trial." *Id.* at 801. As such, a suit seeking monetary damages does not qualify as irreparable harm. *See Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) ("The availability of adequate monetary damages belies a claim of irreparable injury."); *Checker Cab of Philadelphia Inc. v. Uber Techs., Inc.*, 643 F. App'x 229, 232 (3d Cir. 2016) (citations and quotation marks omitted) ("Accordingly, it is clear that this Court has long held that an injury measured in solely monetary terms cannot constitute irreparable harm.").

Here, Plaintiff has not demonstrated irreparable harm justifying *ex parte* injunctive relief. Plaintiff's suit seeks the recovery of money for Defendants' alleged misconduct. Plaintiff makes no showing that Hector DAO and Hassan, which respectively conduct business and reside in New Jersey, (Compl. ¶¶ 3–4), would not be able to pay an award after trial. *See, e.g., Schiermeyer on Behalf of Blockchain Game Partners, Inc. v. Thurston*, No. 23-589, 2023 WL 6609566, at *4 (D.

5

Utah Oct. 9, 2023) (denying motion for TRO seeking to freeze digital assets because even though the wrongly taken assets were "allegedly liquidated are difficult to trace, plaintiff had not demonstrated that defendant "would likely be unable to pay an award of money damages after a trial"). If Plaintiff is ultimately successful in its suit, the assets held in the Treasury might be sold to satisfy the judgment. But that possibility, by itself, does not justify freezing the Treasury assets via preliminary injunction.

The handful of out-of-Circuit cases Plaintiff cites do not require otherwise. Generally, it is true that cryptocurrencies cannot be traced with the same clarity, and potentially recovered via the same methods, as funds transferred via the traditional financial system. Several of the cases Plaintiff cites involved a plaintiff seeking the recovery of specific assets wrongfully stolen from the plaintiff and traced to a particular account. *See Astrove v. Doe*, No. 22-80614, 2022 WL 2805345, at *1 (S.D. Fla. June 17, 2022) (entering Rule 65 injunctive relief freezing cryptocurrency wallet addresses to which plaintiff's stolen cryptocurrency had been transferred); *Heissenberg v. Doe*, No. 21-80716, 2021 WL 8154531, at *2 (S.D. Fla. Apr. 23, 2021) (same).[7] Freezing identified stolen tokens in an identified account holding the ill-gotten proceeds of a theft is not comparable to freezing the assets Named Defendants hold, some unknown percentage of which Plaintiff gave to Named Defendants and to which Plaintiff has a claim.

Further, Plaintiff's delay in bringing suit undercuts the claimed urgency. "A several month delay in bringing a preliminary injunction motion can undermine an asserted claim of imminent, irreparable harm." *Vita-Pure, Inc. v. Bhatia*, No. 14-7831, 2015 WL 1496396, at *4 (D.N.J. Apr.

---

[7] Plaintiff also cites a case in which the court did not perform the irreparable harm analysis because the party seeking *ex parte* injunctive relief was the Federal Trade Commission, which in that Circuit did not need to show irreparable harm. *See Fed. Trade Comm'n v. Dluca*, No. 18-60379, 2018 WL 1830800, at *1 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 18-60379, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018).

1, 2015); *see also PTT, LLC v. Gimme Games*, No. 13-7161, 2014 WL 5343304, *3 (D.N.J. Oct. 20, 2014); *Ultimate Trading Corp. v. Daus*, No. 07-4203, 2007 WL 3025681, *5 (D.N.J. Oct. 12, 2014). Here, Plaintiff states that the largest security incidents that allegedly depleted the Treasury assets occurred in June and July 2023. (Meyer Decl. ¶¶ 19–20.) Plaintiff did not file suit until over seven months later, indicating that the harm is less clear than Plaintiff claims. The timing of Plaintiff's claimed urgency is further undercut by the fact that Plaintiff's purchase of HEC tokens immediately *followed* each of these two security incidents. (*Id.* ¶¶ 16, 19–20.) It is difficult to understand how the alleged January 2024 security incident created an urgency that was raised by the June and July 2023 incidents, when Plaintiff decided to purchase the HEC tokens that form the basis for its claims *after* the 2023 incidents occurred.

Finally, the sole source Plaintiff cites in support of its claim of irreparable harm casts doubt on the claimed harm's likelihood. A party seeking a preliminary injunction must make "a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat.'" *Golden Fortune*, 2022 WL 3536494, at *5 (quoting *Acierno v. New Castle Cnty.*, 40 F.3d 645, 655 (3d Cir. 1994)). The "*risk* of irreparable harm is not enough." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (emphasis added). Plaintiff writes that "the Hector DAO disclosed just this week that they are liquidating even more assets, depleting the Treasury Assets even further." (ECF No. 2-2 at 8.) This, Plaintiff argues, shows the likelihood of imminent asset dissipation. However, Plaintiff's only basis for this belief is a single line from an email from Hector DAO's former attorney that "[b]ased on the last information available, which may now be out of date, Hector Network was in the process of having a liquidator or receiver appointed by court." (Ex. A to Newman Decl., ECF No. 4 at *4.) Notably, the former attorney wrote that Hector DAO may have a *court* appoint a liquidator, not merely, as plaintiff wrote, liquidate the assets itself. Any

possibility of harm is greatly reduced when liquidation proceeds with the guardrails offered by a court proceeding. In any event, a former attorney's statement that a court is appointing a liquidator is too tenuous a basis to make out a "clear showing" of immediate harm. *Golden Fortune*, 2022 WL 3536494, at *5.

Accordingly, Plaintiff Motion fails on the irreparable injury prong. Although not necessary to the Court's decision, two other considerations support this outcome.

*First*, Plaintiffs have provided insufficient information for the Court to assess the effect on third parties that would result from entering the requested relief. *See Doe v. Colautti*, 592 F.2d 704, 706 (3d Cir. 1979) ("A district court should also consider, when they are relevant, the possibility of harm to third parties from the injunction and the effect of the injunction on the public interest." (citing *Delaware Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 920 (3d Cir. 1974))). Meyer states that Plaintiff purchased a total of 18,642 HEC tokens in June and July 2023. (Meyer Decl. ¶ 16.) Ownership of the HEC tokens entitles Plaintiff to some proportionate share of the profits generated by token ownership—that is, some proportionate share of the assets held in the Treasury which Plaintiff seeks to freeze. (*Id.* ¶ 12.) However, Plaintiff does not say what proportion of all issued HEC tokens its 18,642 tokens represents or the value of the assets held in the Treasury. Therefore, it is not clear what proportion of the Treasury assets Plaintiff could even claim—0.01%, 1%, 10%, 90%. Nor is it clear the value of the assets the Court's order would freeze—$100,000 or $100 million. Plaintiff appears to include presumably the holdings of various unnamed third parties, who may well not share Plaintiff's view or position in this lawsuit.[8]

---

[8] Plaintiff acknowledges this concern in its brief, writing that "[w]hile the Fund may only be entitled to a portion of the Treasury Assets, this Court should still order Circle to freeze all of its USDC tokens . . . because the mechanism by which Circle can block USDC is to block all of the USDC in a particular wallet

*Second*, Plaintiff's TRO application does not address Rule 65(c)'s requirement that "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." This requirement is interpreted "strictly." *Globus Med., Inc. v. Vortex Spine, LLC*, 605 F. App'x 126, 129 (3d Cir. 2015). Rule 65(c)'s bond requirement is critical to deterring "rash applications for interlocutory orders." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 391 (3d Cir. 2021) (citation omitted). The Third Circuit has "never excused a District Court from requiring a bond where an injunction prevents commercial, money-making activities." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010). Plaintiff's only mention of the bond requirement is in the proposed order's language that no bond is required. (ECF No. 2-4 at *8.) Plaintiff's moving brief is silent on why no bond is appropriate in this case, which involves some unspecified amount of money damages. Plaintiff offers no explanation why, in the event it turns out *ex parte* relief was inappropriate here, it should not face forfeiture of a posted bond. For similar reasons above, it is impossible for the Court to determine whether a bond is appropriate when Plaintiff has not indicated the value of the assets it asks the Court to freeze. Therefore, the Court is unable to conduct the "case-specific analysis that accounts for the factual circumstances of the parties, the nature of the case and competing harms, and the scope and potential impact of the injunction" required. *Mallet & Co. Inc.*, 16 F.4th at 392.

**B.     ORDER TO SHOW CAUSE AND ORDER PERMITTING ALTERNATIVE SERVICE**

Plaintiff also seeks relief on two additional grounds. First, Plaintiff seeks an Order to Show Cause why the Court should not convert the sought TRO into a preliminary injunction pursuant to

---

and not by blocking an individual token." (ECF No. 2-1 at 16.) Plaintiff has failed to provide the Court with any information on the impact on non-parties by this subject proposed Temporary Restraining Order.

Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1. (ECF No. 2-4 at *8.) Second, Plaintiff requests to serve Defendants by alternative means. (ECF No. 2-4 at *9.)

Local Civil Rule 65.1 permits a party to seek preliminary injunctive relief via an order to show cause only "on a clear and specific showing by affidavit . . . or verified pleading of good and sufficient reasons why a procedure other than by notice of motion is necessary." L. Civ. R. 65.1. For the reasons set forth above in finding that Plaintiff has not demonstrated entitlement to a TRO, the Court finds that Plaintiff has not adequately demonstrated why its request for preliminary injunctive relief should proceed via an order to show cause rather than as a motion to which Named Defendants may respond in the normal course. Therefore, the Court will set an *ex parte* teleconference for Tuesday, February 20th at 11 a.m., at which it will hear from Plaintiff on its requested relief. The Court reserves judgment on Plaintiff's request for an order to show cause and to permit service by alternative means.

## IV.     CONCLUSION

For the reasons set forth above, Plaintiff's *ex parte* Motion for a Temporary Restraining Order, (ECF No. 2), is **DENIED**. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: February 13, 2024